**Ellen Faye RUSH, Appellant,**

v.

**In the Matter of the Application for APPOINTMENT OF a TRUSTEE FOR the PURPOSE OF SECURING AN OIL AND GAS LEASE Covering the SE/4 of Section 25, Township 16 North, Range 12 East, Okmulgee County, Oklahoma, Appellee.**

**No. 83210.**

Court of Appeals of Oklahoma,
Division No. 4.

May 9, 1995.

---

Stratton Taylor, Carle, Higgins, Mosier & Taylor, Claremore, for appellant.

Tom J. Laub, Okmulgee, for appellee.

GOODMAN, Presiding Judge.

This is an appeal from a trial court order approving a trustee's accounting of assets, but denying the trustee's petition for distribution. The dispositive issue is whether funds under control of the trustee appointed to represent the interest of contingent remaindermen of a life estate are to be treated as income distributable to a surviving life tenant, or as principal held for the benefit of the undetermined class of contingent remaindermen. Based upon our review of the record and applicable law, we reverse and remand for further proceedings.

## I

This is a case of equitable cognizance; therefore, it is our duty to weigh the evidence, and unless the judgment is clearly against the weight of the evidence, contrary to law, or a clear abuse of discretion, the judgment of the trial court will be affirmed. *King v. Rainbolt*, 515 P.2d 228 (Okla.1973).

The facts are not in dispute. On January 11, 1962, the trial court equally divided the estate of Lucinda Hesson, deceased, according to the terms of her will among three heirs, including appellant Ellen Faye Rush, Hesson's daughter. The order stated that Hesson's 160–acre homestead was "to be held by the three heirs ... as Life Estates, for the use and benefit of their heirs."

In 1978, certain heirs of the estate executed an oil and gas lease covering the homestead. The lease assignee brought a special proceeding for appointment of a trustee to execute a lease on behalf of the undetermined class of contingent remaindermen of the life estate as provided for in 60 O.S.1971 § 71, which reads as follows:

> In any case where, by will or deed or other instrument, title to real estate is in a tenant for life or other person having the right to the use thereof and income therefrom, with the remainder interest left to one or more contingent remaindermen, so that it is impossible to determine until the

death of the life tenant or the future happening of some other determining event, what interest, if any, the various contingent remaindermen will take; the district court, upon the application of the life tenant, shall have jurisdiction and authority to appoint a trustee under proper bond, over said real estate, for the purpose of leasing the same for oil and gas developing purposes.

A trustee was appointed, a lease was executed, and the trustee received, invested, and distributed the signing bonus and production royalties pursuant to an order filed June 16, 1980.[1] The trustee continued to invest production royalties until hydrocarbon production from the homestead ceased sometime in the 1980s. Thereafter the trustee managed the investments as they accumulated interest, but no further disbursements were made.

In 1991, appellant Ellen Faye Rush executed an oil and gas lease in her own right as sole surviving life tenant, and received a signing bonus. On September 22, 1993, a successor trustee filed an "Annual Report and Accounting" for 1987 through the date of filing, and petitioned the court for approval to distribute $5,546.67 he had received in 1991 after executing a similar lease on behalf of the contingent remaindermen. The trustee characterized the money as "lease payments upon the property in question, as distinguished from interest payments upon mo-

nies previously held for the benefit of the Contingent Remainder."

In an order filed February 11, 1994, the trial court found that (1) the 1980 distribution plan was erroneous in ordering distribution to the heirs of a deceased life tenant "in that all the life tenants are not, and were not at that time, deceased," but that the statute of limitations barred recovery of "funds distributed prior to 1988"; (2) "all monies now in the possession of the Trustee are held by the Trustee for the contingent remaindermen and the life tenant has no claim or interest therein"; and (3) because "the identity of the contingent remaindermen cannot be determined until the last life tenant dies ... the Trustee's Petition for Distribution is hereby denied."

The trial court later denied the life tenant's timely request for reconsideration. The life tenant appeals.

## II

■ The life tenant contends the trial court erred in failing "to direct distribution of signing bonuses received for the granting of oil and gas leases and the interest earned from the investment of royalties received by the trustee as authorized by Oklahoma law." We agree.

The life tenant correctly states that 60 O.S.1991 §§ 71 through 73, express a clear legislative intent to abrogate the common-law prohibition on severance of oil and gas and

1. The parties agree that the distribution order was erroneous and contrary to the terms of the Hesson will, but that the order has become final, and the funds distributed in 1980 cannot be recouped. The court purported to base its 1980 distribution order on 60 O.S.1971 § 175.33, which states:

Where any part of the principal consists of any interest in lands, including *royalties,* overriding royalties, and working interests, from which may be taken timber, minerals, oil, gas, or other natural resources and the trustee or tenant is authorized by law ... to sell, lease, or otherwise develop such natural resources, and no provision is made for the disposition of the net proceeds thereof after the payment of expenses and carrying charges on such property, such proceeds, *if received as extension payments on a lease or bonus for the execution of the same, shall be deemed income,* but *if received as consideration whether as royalties or*

*otherwise, for the permanent severance of such natural resources from the lands, shall be apportioned to principal and income* as follows:

Such percentage thereof as is permitted to be deducted for depletion under the then existing laws of the United States for federal income tax purposes shall be treated as *principal and invested or held for the use and benefit of the remainderman,* and *the balance shall be treated as income subject to be disbursed to the tenant* or person entitled thereto, or if no provision for such deduction for depletion is made by the then existing federal laws, then twenty percent (20%) of the net proceeds thereof each year shall be treated as *principal and invested or held for the benefit of the remainderman* and the balance shall be treated as *income and subject to be disbursed to the tenant* or person entitled to receive such income.... (Emphasis added.)

other minerals from land held by a life tenant, to facilitate efficient development of our state's natural resources, and to establish "a process whereby the rights of the contingent remaindermen could be preserved."

Generally, income associated with oil and gas development falls within three categories: bonuses, rentals, and royalties. *Dixon v. Mapes,* 181 Okla. 376, 73 P.2d 1131 (1937). At issue in the matter before us is the right to immediate possession of (1) the $5,546.67 signing bonus paid to the trustee; (2) production royalties paid to the trustee on behalf of the contingent remaindermen; and (3) interest earned on the production royalties invested and managed by the trustee on behalf of the remaindermen.

The trustee contends "there is no reason or law that would require the Trustee to turn [the bonus] to the Life Tenant." To the contrary, the legislative mandate of 60 O.S. 1991 § 72, is unequivocal: A trustee appointed to represent the interest of contingent remaindermen is authorized to execute "valid oil and gas leases and other mining leases ... the *bonus and rentals therefrom to be paid to the life tenant....*" (Emphasis added.) It is irrelevant that the bonus was paid to the trustee for uniting the future interest of the remaindermen with the present possessory interest of the life tenant. We specifically reject the trustee's contention that "[t]he trustee for the contingent remaindermen owes no duty to the life tenant." The life tenant is statutorily entitled to the bonus, and the trustee has a duty not only to receive it, but to distribute the bonus to the life tenant.

We therefore reverse the order of the trial court, and hold that the life tenant is entitled to the $5,546.67 signing bonus held in trust by the trustee.

■ If mineral production is obtained from the leasehold, production royalties are to be paid to the trustee on behalf of the remaindermen as compensation "for the permanent severance of such natural resources from the lands...." 60 O.S.1991 § 175.33.[2]

Section 175.33 sets out a *pre-investment* method for apportioning production royalties between *income* to be distributed to the life tenant before investment of the balance, and *principal* to be invested and maintained by the trustee on behalf of the remaindermen until such time as the trust is closed.

The trustee identified $229.95 as "royalty" received since 1987.[3] We hold that, pursuant to 60 O.S.1991 § 175.33, the life tenant is entitled to a proportionate share of all royalties paid to the trustee. This right shall be a continuing right retrospectively beginning five years from September 22, 1993, the date the trustee filed his petition for distribution. 12 O.S.1991 § 95 (Fifth); *Howard v. Jeffrey,* 268 P.2d 897 (Okla.1953).

After production royalties are apportioned by the trustee pursuant to 60 O.S.1991 § 175.33, the trustee is statutorily authorized to "invest income from royalties in like manner as funds from guardianships...." 60 O.S.1991 § 73. The royalties invested by the trustee on behalf of the remaindermen:

> shall remain intact until the ultimate taker is determined and shall then be paid over to such ultimate taker and the trust closed. *Income from investments shall be paid to the life tenant* or other person entitled thereto. 60 O.S.1991 § 73. (Emphasis added.)

■ We hold that the directive of § 73 is clear: The life tenant is entitled to interest income generated by investment of the contingent remaindermen's proportionate share of production royalties. In the matter before us, that entitlement likewise is a continuing right commencing retrospectively five years from September 22, 1993, the date the trustee filed the petition for distribution. 95 O.S. 1991 § 95 (Fifth); *Howard v. Jeffrey,* 268 P.2d 897 (Okla.1953).

The trial court's order is reversed, and the matter remanded for further proceedings consistent with this opinion. The life tenant's request for appellate attorney's fees

---

**2.** *See* n. 1, *supra.*

**3.** The trustee reported Bricar Resources paid $135.14 on October 28, 1987; $68.54 on May 27, 1988; and $26.27 on December 1, 1988.

and costs is denied. REVERSED AND RE-MANDED.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.